# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| CHAZ O. GULLEY, <br>     Plaintiff, <br><br> v. <br><br> LIEUTENANT SEMPLE, et al., <br>     Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 3:16-cv-1575 (MPS) <br><br><br><br> DECEMBER 21, 2016 |

## INITIAL REVIEW ORDER

Plaintiff Chaz O. Gulley, currently incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983 asserting claims for violation of his Eighth Amendment rights. He asserts federal claims for use of excessive force and deliberate indifference to serious medical needs. The plaintiff names as defendants Commissioner Semple, Captain Shabenas, Deputy Warden Zegarzewski, Lieutenant Perez, Lieutenant Shweighoffer, Director of Security Whidden, Captain Korch, Correctional Officer Pearson, Nurse J. Brennan, Counselor Gaudet, and District Administrator Peter Murphy. All defendants are named in individual and official capacities.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

I.   Allegations

The plaintiff divides his allegations into five counts: (1) deliberate indifference/sexual harassment, (2) and (3) unreasonable force, (4) excessive force, and (5) due process.

A.   Deliberate Indifference/Sexual Harassment

On April 11, 2016, the plaintiff was transferred from Corrigan Correctional Institution ("Corrigan") to Walker Correctional Institution ("Walker"). His transfer coincided with the service of a complaint in another federal civil rights action filed by the plaintiff. Walker houses security risk group program phases one and two. The plaintiff was housed in phase three of the program at Corrigan. Even though the conditions at Walker were more restrictive, the plaintiff was relieved at the transfer. While at Walker, he had no negative confrontations with correctional staff.

On July 11, 2016, the plaintiff was transferred back to Corrigan. The plaintiff was confused about the transfer and became paranoid. He told Mental Health staff Linda that he did not feel safe. In response, Mental Health staff placed the plaintiff on Behavior Observation Status in the restrictive housing unit. The lieutenant escorting the plaintiff to restrictive housing told him that the administration would see him in the morning.

2

On July 12, 2016, Warden Santiago, Deputy Warden Zegarzewski, and Captain Shabenas stopped at the plaintiff's cell. The plaintiff repeatedly asked why he was back at Corrigan when he was transferred because he had filed a civil lawsuit. Captain Shabenas told the plaintiff that they did not care about his lawsuit. The officials believed that the plaintiff had a sexual relationship with a female officer and, once the officer had transferred to a different correctional facility, the plaintiff was brought back to Corrigan. Captain Shabenas stated that they were also suspicious of the relationship between the plaintiff and supervising psychologist Coursen. The plaintiff claimed a professional relationship only.

When the officials continued their tour of the unit, Lieutenant Perez inquired about the relationship between the plaintiff and Dr. Coursen. Lieutenant Perez stated that Dr. Coursen was making enemies because she reports improper conduct by correctional staff. He offered to have the plaintiff transferred back to general population if he would help set up Dr. Coursen. The plaintiff ignored the offer.

Between July 12, 2016, and August 16, 2016, the plaintiff requested mental health services about twice each week for complaints of agitation, stress, depressing moods, and paranoid thoughts. Mental Health Social Worker Matt told the plaintiff that Dr. Coursen was on vacation but would see him when she returned. No other mental health staff member would treat the plaintiff until Dr. Coursen returned, because she had been seeing him weekly and had the best rapport with him. The plaintiff also attributes the lack of treatment to mental health social workers being laid off.

The plaintiff wrote several letters to Commissioner Semple regarding his Security Risk Group status and placement. Commissioner Semple referred the letters to Director of Security

Whidden, who has not yet removed the plaintiff from the Security Risk Group Program.

On August 12, 2016, the plaintiff signed paperwork to enter phase five of the Security Risk Group Program, the final phase of the program. On August 16, 2016, the plaintiff had a scheduled legal call with Assistant Attorney General Wilson, counsel for the defendants in another of the plaintiff's federal civil rights actions. Counselor Gaudet told the plaintiff that the legal call had been cancelled as the result of a facility lockdown.

The plaintiff experienced an emotional breakdown and threw a cosmetic item at his cell wall. Lieutenant Perez was called to the housing unit. The plaintiff was told that he would be taken to speak with mental health staff and that he should not receive a disciplinary report for the outburst as he did not threaten to hurt himself or others. The plaintiff allowed correctional staff to handcuff him with his hands behind his back.

B.     Unreasonable Force

Three hours later, the plaintiff remained in restrictive housing. When he spoke with District Administrator Murphy at his cell door regarding "the things he was going through while housed at Corrigan," ECF No. 1, ¶ 12, District Administrator Murphy deferred to Deputy Warden Zegarzewski.

An hour later, the plaintiff received a disciplinary report for interference with safety and security as a result of the incident in his cell. Captain Doughtery told him that he would return to phase three of the Security Risk Group Program. In protest, the plaintiff covered his cell window.

Verbal intervention was used and, eventually, the plaintiff consented to be handcuffed. Lieutenant Shweighoffer and Captain Korch, with Captains Shabenas and Doughtery present,

4

ordered the plaintiff placed in four-point restraints. Lieutenant Shweighoffer refused to permit the plaintiff to use the bathroom after he had been confined for between three and four hours. Prisoners are supposed to be permitted a bathroom and range of motion break after two hours.

After three hours, Lieutenant Shweighoffer and other staff refused to switch the plaintiff to in-cell restraints to allow him to use the bathroom. Lieutenant Shweighoffer ordered staff to cut off the plaintiff's clothes and place him in a safety gown.

    C.       Excessive Force

After the plaintiff had requested to use the bathroom more than ten times, Lieutenant Shweighoffer offered him a urinal and bedpan, knowing that the plaintiff was chained to the bed and use of these devices would be uncomfortable. The plaintiff refused.

Nurses Holly and Abby conducted fifteen-minute checks on the plaintiff during the first and second shifts without problem. Between 7:00 p.m. and 8:00 p.m., Lieutenant Shweighoffer and other staff came to conduct a range of motion check. By this time, the plaintiff had urinated on his left leg and the floor next to the bed. Before the camera was turned on, the plaintiff overheard Lieutenant Shweighoffer whisper to Correctional Officer Pearson that he was going to permit the plaintiff to shower while handcuffed and shackled.

The officers escorted the plaintiff to the shower. When the plaintiff returned to his cell to be placed in the four-point restraints, he noticed that the soft restraints closest to his face were soaked in urine. Lieutenant Shweighoffer stated that this was cleaning solution. The plaintiff was returned to the four-point restraints. Nurse Brennan refused to conduct medical checks on the plaintiff after he complained to her that he felt pain and numbness in his neck and arms.

On August 23, 2016, the plaintiff stopped Dr. Coursen while she was conducting a

5

routine unit tour and asked to be seen.  Before Dr. Coursen could respond, Lieutenant Lipinsky told Dr. Coursen to leave the plaintiff's door.  She did so.  Lieutenant Lipinsky told the plaintiff that Dr. Coursen had been ordered by the prison administration not to speak with the plaintiff.

      D.      Due Process Failure

On August 24, 2016, the plaintiff attended a disciplinary hearing on three disciplinary reports for threats on staff.  The reports were issued by Correctional Officer Savoie, Lieutenant Shweighoffer and Nurse Brennan.  The plaintiff told his advocate and the hearing officer that the charges were false.  The plaintiff was found guilty of all charges.

Shortly thereafter, the plaintiff attended a legal visit.  When the visit was concluded several hours later, the plaintiff was escorted to the A/P area to be transferred to Walker Correctional Institution.

II.      Analysis

Although the plaintiff separates his allegations into five sections, each section does not include one discrete claim.  For example, in his first count, he has included claims for denial of mental health treatment, harassment, and his classification on Security Risk Group status, and his claims for use of unreasonable force and excessive force in counts two and three are part of the same claim challenging his placement on in-cell restraint status.

The complaint does not comply with Federal Rule of Civil Procedure 20's requirements governing party joinder.  Rule 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: first, the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and second, "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

"What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). As the Second Circuit has observed in the Rule 13 context,[1] whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

The plaintiff asserts a series of unrelated claims. For example, the challenge to his classification asserted against defendants Semple and Whidden is the only claim referencing these defendants. The plaintiff's excessive force claims are unrelated to his claim of deliberate indifference to serious mental health needs and the claims involve different defendants. As the claims do not "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences," Fed. R. Civ. P. 20(a)(2), the complaint fails to comply with Rule 20.[2]

Because the Second Circuit has expressed a preference for adjudicating cases on their

---

[1] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

[2] The court notes that Rule 20 is becoming increasingly important to district courts tasked with reviewing prisoner's complaints pursuant to 28 U.S.C. § 1915A. As two commentators have noted:

> In the past, courts did not always pay much attention to this rule. However, nowadays they are concerned that prisoners will try to avoid the filing fee and "three strikes" provisions of the Prison Litigation Reform Act (PLRA) by joining claims in one complaint that really should be filed in separate actions which require separate filing fees and would count as separate "strikes" if dismissed on certain grounds.

John Boston & Daniel E. Manville, Prisoners' Self-Help Litigation Manual 348 (4th ed. 2010) (collecting cases).

merits, it will generally find failure to grant leave to amend an abuse of discretion where the sole ground for dismissal is that the complaint does not comply with rules governing joinder. *See, e.g., Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988). Accordingly, the plaintiff is hereby directed to file an amended complaint that complies with Rule 20 of the Federal Rules of Civil Procedure. The amended complaint shall include only one of the distinct sets of claims and shall list only the defendants involved in that claim in the case caption.

III.     Conclusion

The Court enters the following orders:

(1)     The plaintiff shall file his amended complaint within **thirty (30) days** from the date of this order. If he wishes to pursue his other claims, he may do so in separate actions.

(2)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(3)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

**SO ORDERED** this 21st day of December 2016 at Hartford, Connecticut.

                                              /s/
                                    Michael P. Shea
                                    United States District Judge