UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHAZ O. GULLEY,<br>    Plaintiff, | : <br> : <br> : | CASE NO. 3:16-cv-1575 (MPS) |
| v. | : <br> : | |
| LIEUTENANT SEMPLE, et al.,<br>    Defendants. | : <br> : <br> : | JANUARY 23, 2017 |

**INITIAL REVIEW ORDER RE AMENDED COMPLAINT**

Plaintiff Chaz O. Gulley, currently incarcerated, has filed an amended complaint in accordance with the Court's December 21, 2016 Order. The plaintiff asserts a claim for use of excessive force against defendants Captain Shabenas, Lieutenant Perez, Lieutenant Shweighoffer, Captain Korch, Correctional Officer Pearson and Captain Doughtery. All defendants are named in individual and official capacities.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

I.      Allegations

On April 11, 2016, the plaintiff was transferred from Corrigan Correctional Institution ("Corrigan") to Walker Correctional Institution ("Walker").  His transfer coincided with the service of a federal complaint in another federal civil rights action filed by the plaintiff.  Walker houses the Security Risk Group Program, phases one and two.  The plaintiff had been housed in phase three of the program at Corrigan.  Even though the conditions at Walker were more restrictive, the plaintiff was relieved at the transfer because he had no negative confrontations with correctional staff at Walker.

On July 11, 2016, the plaintiff was transferred back to Corrigan.  The plaintiff was confused about the transfer and became paranoid.  He told Mental Health staff Linda that he did not feel safe.  In response, Mental Health staff placed the plaintiff on Behavior Observation Status in the restrictive housing unit.  The lieutenant escorting the plaintiff to restrictive housing told him that the administration would see him in the morning.

On July 12, 2016, Warden Santiago, Deputy Warden Zegarzewski, and Captain Shabenas stopped at the plaintiff's cell.  The plaintiff repeatedly asked why he was back at Corrigan when he was transferred because he had filed a civil lawsuit.  Captain Shabenas told the plaintiff that they did not care about his lawsuit.  The officials believed that the plaintiff had a sexual relationship with a female officer and, once the officer had transferred to a different correctional facility, the plaintiff was brought back to Corrigan.  Captain Shabenas also stated that they were

2

suspicious of the relationship between the plaintiff and supervising psychologist Coursen. The plaintiff claimed a professional relationship only.

When the officials continued their tour of the unit, Lieutenant Perez inquired about the relationship between the plaintiff and Dr. Coursen. He stated that Dr. Coursen was making enemies because she reports improper conduct by correctional staff. Lieutenant Perez offered to have the plaintiff transferred back to general population if he would help set up Dr. Coursen. The plaintiff ignored the offer.

Between July 12, 2016, and August 16, 2016, the plaintiff requested mental health services about twice each week for complaints of agitation, stress, depressing moods, and paranoid thoughts. Mental Health Social Worker Matt told the plaintiff that Dr. Coursen was on vacation but would see him when she returned. No other mental health staff member would treat the plaintiff until Dr. Coursen returned, because she had been seeing him weekly and had the best rapport with him.

The plaintiff wrote several letters to Commissioner Semple regarding his Security Risk Group status and placement. Commissioner Semple referred the letters to Director of Security Whidden, who had not removed the plaintiff from the Security Risk Group Program at the time the amended complaint was filed.

On August 16, 2016, the plaintiff experienced an emotional breakdown in his cell. Lieutenant Perez responded to the housing unit and told the plaintiff that he would be seen by mental health staff. The plaintiff was handcuffed and escorted to the restrictive housing unit. Lieutenant Doughthery told the plaintiff that he would return to phase 3 and serve six more months in restrictive housing.

To protest the conditions of his confinement, the plaintiff covered his cell window. Verbal intervention was used and, eventually, the plaintiff consented to be handcuffed. Lieutenants Perez and Shweighoffer, and Captains Korch, Shabenas and Doughtery were present when officials immediately upgraded the plaintiff to four-point restraints. Captain Shabenas ordered both four-point soft restraints and hard metal restraints to be used. Lieutenant Shweighoffer refused to permit the plaintiff to use the bathroom after he had been confined for between three and four hours. Prisoners are supposed to be permitted a bathroom and range of motion break after two hours.

After three hours, Lieutenant Shweighoffer and other staff refused to switch the plaintiff to in-cell restraints to allow him to use the bathroom. Lieutenant Shweighoffer ordered staff to cut off the plaintiff's clothes and place him in a safety gown.

After the plaintiff had requested to use the bathroom more than ten times, Lieutenant Shweighoffer offered him a urinal and bedpan, knowing that the plaintiff was chained to the bed and use of these devices would be uncomfortable. The plaintiff refused.

Nurses Holly and Abby conducted fifteen-minute checks on the plaintiff during the first and second shifts without problem. Between 7:00 p.m. and 8:00 p.m., Lieutenant Shweighoffer and other staff came to conduct a range of motion check. By this time, the plaintiff had urinated on his left leg and the floor next to the bed. Before the camera was turned on, the plaintiff overheard Lieutenant Shweighoffer whisper to Correctional Officer Pearson that he was going to permit the plaintiff to shower while handcuffed and shackled.

The officers escorted the plaintiff to the shower. When the plaintiff returned to his cell to be placed in the four-point restraints, he noticed that the soft restraints closest to his face were

4

soaked in urine. Lieutenant Shweighoffer stated that it was cleaning solution. The plaintiff was returned to the four-point restraints.

On August 23, 2016, Dr. Coursen stopped at the plaintiff's cell. The plaintiff asked to be seen. Before Dr. Coursen could respond, Lieutenant Lipinsky told Dr. Coursen to leave the plaintiff's door. She did so. Lieutenant Lipinsky told the plaintiff that Dr. Coursen had been ordered by the prison administration not to speak with the plaintiff.

II.     Analysis

The plaintiff asserts claims for excessive use of force against all defendants and failure to prevent the harm. He alleges that the defendants conspired to violate his rights and caused him to suffer pain, fear, anxiety, humiliation and emotional distress.

   A.     Official Capacity Claims

The plaintiff has named all defendants in individual and official capacities. However, he seeks only damages. The Eleventh Amendment divests the district court of subject matter jurisdiction over claims for money damages against state officials acting in their official capacities unless the state has waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity, *see Quern v. Jordan*, 440 U.S. 332, 343 (1979), and the plaintiff has provided no evidence that the State of Connecticut has waived immunity. Thus, any claims against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

   B.     Use of Excessive Force

The use of excessive force against a prisoner can constitute cruel and unusual punishment even where the inmate does not suffer serious injuries. *See Hudson v. McMillian*, 503 U.S. 1, 4

(1992), *accord Wilkins v. Gaddy*, 559 U.S. 34, 34, 36 (2010) (per curiam).  The "core judicial inquiry" is "not whether a certain quantum of injury was sustained but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7 (internal quotation marks omitted).  There are objective and subjective components to the excessive force standard.  *Hudson*, 503 U.S. at 8.  Objectively, the court must consider the level of force used against the inmate and determine whether that force is repugnant to the conscience of mankind. *Id.* at 9-10.  Subjectively, the court must determine whether the defendants had a "wanton" state of mind when applying the force. *Id.* at 8.

The extent of the inmate's injuries is one factor the court may use to determine whether the force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm. *Id.* at 7.  Other factors the court may consider include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted).  Thus, even absent significant injury, an inmate can establish an excessive force claim if he can show that the force used was either more than *de minimis* or repugnant to the conscience of mankind, and that the defendants acted with a sufficiently culpable state of mind. *See United States v. Walsh*, 194 F.3d 37, 48-50 (2d Cir. 1999).

The plaintiff alleges that he was confined in four-point restraints without cause.  The impetus of the defendants' actions was one instance of covering his cell door window.  The plaintiff did not resist any orders or act out thereafter.  In addition, the plaintiff alleges that the

defendants acted maliciously while he was restrained by refusing to transfer him to in-cell restraints to relieve himself and placing a urine-soaked restraint near his head. No defendant interceded on the plaintiff's behalf to prevent use of four-point restraints. The Court concludes that the plaintiff states a plausible claim for use of excessive force and failure to intercede to stop the use of excessive force.

III.     Conclusion

All claims against the defendants in their official capacities, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

The Court enters the following orders:

(1)     **The Clerk shall** verify the current work addresses for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him or her in individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Amended Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

**SO ORDERED** this 23rd day of January 2017 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge